UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HARSH KATOCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:04-CV-938 CAS |
| ) | |
| MEDIQ/PRN LIFE SUPPORT SERVICES, ) | |
| INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Court's Order to Show Cause, defendant Mediq/PRN Life Support Services, Inc.'s ("Mediq") motion for sanctions, and plaintiff's motions for sanctions. The Court held a hearing on October 28, 2005 to address these motions. For the following reasons, the Court will impose sanctions against plaintiff's counsel for willful, bad faith violations of the Court's orders and failure to appear for deposition, grant defendant's motion for sanctions, and deny plaintiff's motions for sanctions.

### I. Background

The Court believes a detailed history of this case is important for the purposes of this order. Defendant Mediq removed this action from state court on July 23, 2004. Plaintiff is represented by Naren Chaganti and defendant Mediq is represented by Mark Weisman, Ronald Hack, and Craig Hoefer. Plaintiff originally filed suit against Mediq and John Does 1-10. The Court dismissed the John Doe defendants without prejudice because plaintiff did not make any allegations which were adequately specific to allow identification of them after reasonable discovery. (Order of November 22, 2004). The Case Management Order was issued on December 3, 2004 and contained the following admonition: "Failure to comply with any part of this Order may result in the imposition of

sanctions, including but not limited to dismissal of the action, entry of a default judgment or restrictions on the admissibility of certain evidence. See Local Rule 5.04."

On February 11, 2004, plaintiff filed a first amended complaint against Mediq, David Armstrong, and Brad Thompson. In his amended complaint, plaintiff alleged claims of employment discrimination based on religion, color, and national origin against defendants Mediq, Thompson, and Armstrong under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, and the Missouri Human Rights Act, Mo. Rev. St. § 213.055 (2004). Plaintiff also alleged claims of failure to maintain a discrimination-free workplace; harassment and intimidation based on a medical condition--diabetes; retaliation; assault and battery; negligent hiring, supervision, and retention; intentional infliction of emotional distress; negligent infliction of emotional distress; breach of contract; and breach of the covenant of good faith and fair dealing against defendant Mediq. Finally, plaintiff asserted claims of assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress against defendants Brad Thompson and David Armstrong.

Mediq filed a motion to dismiss the individual defendants Thompson and Armstrong and a motion to dismiss the assault and battery, negligent hiring, supervision, and retention, intentional infliction of emotional distress, and negligent infliction of emotional distress claims against Mediq. At the time this motion was filed and ruled upon, defendants Thompson and Armstrong had not been served with a summons and complaint. The Court granted defendant's motion dismissing the plaintiff's employment discrimination claims under Title VII and the MHRA against Thompson and Armstrong and dismissing the tort claims against Mediq. (Order of April 6, 2005). In the Order of April 6, 2005, the Court reminded plaintiff that under Federal Rule of Civil Procedure 4(m), defendants Thompson and Armstrong must be served within 120 days of the filing of the amended complaint. Id. at 2, n. 1.

On May 2, 2005, the parties filed a joint motion to amend or correct the Case Management Order of December 3, 2004.[1] The Court granted the parties' motion in an order that contained the following language: "Failure to comply with any part of this Order may result in the imposition of sanctions, including but not limited to dismissal of the action, entry of a default judgment or restrictions on the admissibility of certain evidence. See Local Rule 5.04." (Order of May 3, 2005).

On May 17, 2005, defendant Mediq filed a motion to compel plaintiff's compliance with discovery requests. On June 23, 2005, the Court held a discovery hearing by telephone and the parties informed the Court that the dispute had been resolved and the parties had agreed to submit a joint proposed motion to amend the Case Management Order. The Court told the parties the motion would be granted when a proposed order was submitted. Defendant's first motion to compel was denied as moot.

On July 13, 2005, Mediq filed a second motion to amend the Case Management Order. In that motion, Mediq asserted that plaintiff had agreed to extend certain deadlines on the date of the telephone discovery conference of June 23, 2005, but had not responded to repeated phone calls and e-mails from Mediq's counsel or signed a joint motion to the Court. Plaintiff did not respond to Mediq's motion. The Court granted the motion to amend the Case Management Order and specifically stated the following language: "Failure to comply with any part of this Order may result in the imposition of sanctions, including but not limited to dismissal of the action, entry of a default judgment or restrictions on the admissibility of certain evidence. See Local Rule 5.04." (Memorandum and Order of August 15, 2005). In that Order, the discovery deadline was extended

---

[1] In this motion, plaintiff and defendant requested additional time to disclose expert witness reports. The Court granted the motion. At the show cause hearing, plaintiff erroneously asserted that the Court denied his motion for an extension of time to bring in expert testimony. On August 26, 2005, the Court did grant defendant's motion to exclude plaintiff's treating physicians from testifying regarding causation or prognosis because they did not submit expert reports.

to September 30, 2005. On August 15, 2005, pursuant to the Case Management Order, the Court issued an Order Referring Case to Alternative Dispute Resolution, which ordered the parties to select a neutral and complete mediation no later than October 14, 2005.

On July 29, 2005, plaintiff filed a motion to compel compliance with a subpoena against the City of Maryland Heights Police Department. At the same time, plaintiff attempted to have the Clerk of Court issue summons for defendants Thompson and Armstrong. The Clerk's Office notified chambers and chambers instructed the Clerk's Office to inform plaintiff's counsel that plaintiff needed to file a motion for leave to serve Thompson and Armstrong out of time. On August 3, 2005, plaintiff filed a motion for leave to serve Thompson and Armstrong out of time asserting that he did not serve Armstrong and Thompson because they left Mediq's employ, Mediq failed to disclose information to help serve them, and he only recently found their addresses. On August 10, 2005, Mediq filed a motion to dismiss defendants Armstrong and Thompson for failure to serve. Plaintiff filed a response in opposition that included a motion to require defendant Mediq to pay the mediator's fees. On August 19, 2005, Mediq filed a motion to exclude plaintiff's expert testimony asserting plaintiff's treating physicians intend to testify regarding causation and prognosis but did not file expert reports as instructed in the Case Management Order and amendments thereto.

On August 15, 2005, the Court denied plaintiff's motion for leave to serve Armstrong and Thompson out of time and granted Mediq's motion to dismiss those defendants. In that Order, the Court found that plaintiff had not shown good cause to extend the time for service. Specifically, the Court stated:

> In this case, the Court finds that plaintiff has not shown good cause. Plaintiff filed his amended complaint adding defendants Armstrong and Thompson on February 11, 2005. Therefore, plaintiff had until June 13, 2005, to serve these defendants. **In a previous order, the Court informed plaintiff that he had 120 days after the filing of the amended complaint to serve Armstrong and Thompson. See Order of April 6, 2005, p. 1, n. 2. Nonetheless, plaintiff did not obtain summonses for**

4

> **these defendants until August 2, 2005.** The Court has recently referred the parties to participate in alternative dispute resolution, which must be completed by October 14, 2005. The discovery deadline in this case is September 30, 2005, and the trial date is March 20, 2006. If plaintiff is allowed to serve defendants Armstrong and Thompson at this late date, all deadlines previously established would need to be modified.
>
> Plaintiff asserts that he did not serve Armstrong and Thompson because they left Mediq's employ, Mediq failed to disclose information to help serve these defendants, and he only recently found their addresses. **If plaintiff believed that Mediq had information that would help locate Thompson and Armstrong, he could have filed an appropriate discovery request directed to Mediq, and if necessary, a motion to compel. Plaintiff did not request that summons issue until 170 days after the amended complaint was filed. Plaintiff has not put forth any evidence of the efforts he used to locate these defendants or hindrances in finding Armstrong and Thompson's addresses during the time period that would demonstrate good cause for such a lengthy delay.**

(Mem. and Order of August 25, 2005, pp. 2-3) (emphasis added).

On August 26, 2005, the parties appeared in person at the Court's monthly discovery docket hearing. During that hearing, the Court granted plaintiff's motion to compel directed to the City of Maryland Heights Police Department, granted in part and denied in part Mediq's motion to exclude expert testimony, and denied plaintiff's motion to shift mediation costs. The parties prepared a proposed order, which the Court signed on that date.

On September 29, 2005, chambers received two phone calls from Mediq's counsel. During the first phone call, counsel asked about the procedure to obtain an order to stop a deposition from taking place because the notice of deposition was defective. The Court's law clerk told Mediq's counsel that after a discovery motion and response is filed the Court would address the motion at the next discovery motion docket. Mediq's counsel called a second time again asserting that they received an improper deposition notice earlier that day for September 30, 2005 and wanted to prevent the deposition from taking place. Again, because there was no pending motion, the Court's law clerk told Mediq's counsel that the motion could not and would not be addressed over the phone. Mediq's

counsel was aware this Court has a discovery motion docket for discovery matters on the last Friday of every month at 9:00 a.m. and stated their intention to bring the matter to the discovery docket the next day. The discovery motion deadline in this case was September 30, 2005, and the dispositive motion deadline was set for October 17, 2005.

On September 30, 2005, attorneys Craig Hoefer and Naren Chaganti appeared for Mediq and plaintiff, respectively. The Court did not order any of the parties to appear or request that the parties appear at the September 30, 2005 discovery docket.[2] At 9:09 a.m., Mediq filed a motion for protective order to prevent plaintiff's deposition of former defendant Thompson. At the hearing, the parties disputed whether there was proper notice for Thompson's deposition and brought to the Court's attention disputes regarding the deposition of plaintiff and other witnesses. Plaintiff's counsel also told the Court that Mediq had failed to produce discovery including employment and wage information for Thompson and Armstrong and corporate policies on wages, promotions, hiring, and firing.[3] Mediq responded that it fully produced all employment information for similarly situated employees.

The Court heard both parties' arguments and asked the parties if they could complete the depositions the following week.[4] The parties indicated that they could do so and the Court ordered the parties to complete the remaining depositions the following week so that the dispositive motion

---

[2]As stated in the undersigned's Judge's requirements, see www.moed.uscourts.gov, parties may consent to come to the discovery docket hearing despite not having a full response time as allowed under the Local Rules. The appearance by both parties at the discovery docket on September 30, 2005 implies they consented to the Court's ruling on their discovery matters at that time.

[3]Plaintiff had not previously filed a motion to compel regarding this discovery issue.

[4]In his motion for reconsideration, plaintiff's counsel asserts that the Court should not have reopened the discovery deadlines, because reopening discovery was not before the Court. Plaintiff did not address why it was improper to set new discovery deadlines, but not improper for the Court to address plaintiff's belated discovery requests, without a motion, at the same hearing.

6

deadline would not be disturbed. As is the Court's general practice, the Court ordered the parties to draft and submit a proposed order with agreed upon deposition dates for the Court's signature. Generally, the parties are expected to sign and submit the proposed order immediately following the discovery docket hearing, but counsel were granted leave to submit the proposed order electronically that afternoon.

Later that same day, chambers personnel received a call from defendant Mediq stating that the order was not ready because not all of the witnesses to be deposed had returned counsel's phone calls. On Tuesday, October 4, 2005, defendant's counsel appeared at the Court's informal matters to request an extension of time to complete the depositions and to submit dispositive motions. The Court told defendant's counsel that an extension would be granted after the parties submitted the proposed order. A proposed order was never submitted.

On October 1, 2005, plaintiff filed a Motion for Sanctions. The motion asserts that defendant Mediq should be sanctioned for making false statements regarding its relationship to former defendant David Armstrong. On October 11, 2005, Mediq filed a motion for sanctions requesting dismissal of plaintiff's case for plaintiff's failure to appear at a scheduled deposition. On the same date, the plaintiff filed a second motion for sanctions asserting additional claims of discovery abuse by defendant Mediq. In response to the parties' failure to comply with the Court's previous order, to submit a proposed order containing the Court's rulings from the discovery docket of September 30, 2005, and to complete the depositions, the Court issued an Order to Show Cause to both parties. (Order of October 20, 2005). In that order, the Court ordered the parties to appear at the Court's discovery docket on October 28, 2005, prepared to address the pending motions for sanctions, and show cause why they should not be sanctioned for failure to comply with the Court's orders.

**II. Order to Show Cause**

   **A. Legal Standard**

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Chambers v. Nasco, Inc., 501 U.S. 32, 43 (1991) (quoting Anderson v. Dunn, 5 L.Ed. 242 (1821)). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs as to achieve the orderly and expeditious disposition of cases." Id. (quoting Link v. Wabash R. Co, 370 U.S. 626, 630-31 (1962) (internal citations omitted)) . "A court's inherent power includes the discretionary ability to fashion an appropriate sanction for conduct which abuses the judicial process." Stevenson v. Union Pacific R.R. Co., 354 F.3d 739, 745 (8th Cir. 2004). The Court "may assess attorney's fees as a sanction for the 'willful disobedience of a court order" or "when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." Chambers, 501 U.S. at 45-46 (internal citations omitted).

   **B. Show Cause Hearing**

In its order of October 20, 2005, the Court stated, "the Court will consider the parties' motions for sanctions and whether the Court should impose sanctions against the parties on its own motion and under its inherent authority to regulate practice before it" and ordered the parties (plaintiff and Mediq) to "show cause why they should not be sanctioned by the Court for non-compliance with the Court's orders." (Order of October 20, 2005, p. 2).

Immediately before the hearing began, defendant's counsel Mr. Hoefer told chambers personnel in court that the parties were at that moment discussing new deposition dates. At the commencement of the hearing, the Court told the parties that the proceeding would still be held and

8

asked the parties to make statements about each party's non-compliance with the Court's order to prepare a proposed order and schedule the remaining depositions for the following week.

Mr. Chaganti responded on behalf of the plaintiff. First, Mr. Chaganti stated that "there wasn't much communication between counsel. . . . I was thinking there would be some sort of an understanding about the deposition schedule. But, first I wanted to get all the documents that we requested." The Court told Mr. Chaganti that there are procedures in place if he seeks additional discovery. Mr. Chaganti responded that he "didn't want to disturb the Court too much by filing all these discovery motions."

In response to the Court's inquiry regarding why his client didn't appear for a deposition on October 8, 2005, Mr. Chaganti responded, "That is not true, Your Honor. . . . On October 8 there was indeed a deposition schedule. But we hadn't hand shaked on that thing." Next, Mr. Chaganti stated that he didn't have a chance to contact the client and arrange the deposition.

Second, Mr. Chaganti stated that he could not complete the depositions in one week because he was too busy and the Columbus Day weekend "was extremely tight for me personally." He stated that he had to respond to six motions in one court and file a brief with the U.S. Court of Appeals for the Eighth Circuit on October 12th. The Court inquired of Mr. Chaganti why he did not seek an extension of time from the Court to complete the depositions instead of failing to complete the depositions altogether. Mr. Chaganti responded that he tried to accommodate the deposition, but Mediq did not produce documents and he didn't want to prejudice his client's case by presenting him for deposition without the needed documents.

Mr. Hoefer spoke on behalf of Mediq.[5] Mr. Hoefer responded that there was no intention to disobey the Court's order. Mr. Hoefer asserted that he made attempts to contact Mr. Chaganti to prepare the proposed order and schedule depositions without any success. He asserted that he sent e-mails to Mr. Chaganti about scheduling the depositions of plaintiff and other witnesses. In response to those e-mails, Mr. Hoefer stated that Mr. Chaganti stated that plaintiff could only be deposed on a Saturday and Mr. Chaganti would schedule Thompson's deposition. Mr. Hoefer also asserted that Mr. Chaganti sent additional e-mails accusing Mediq's counsel of unethical and criminal behavior and filed a first motion for sanctions. Mr. Hoefer recounted that he notified the Court and its law clerk at informal matters that the depositions could not be completed in a week because plaintiff would only submit to a deposition on a Saturday. Mr. Hoefer asserted that he attempted to set up a telephone meeting with Mr. Chaganti, but Mr. Chaganti only responded with "caustic" e-mails. Finally, Mr. Hoefer stated that after he had scheduled plaintiff's deposition for October 8, 2005, Mr. Chaganti e-mailed him on October 7, 2005, and stated that he was canceling plaintiff's deposition. Mr. Hoefer appeared for plaintiff's deposition with a court reporter and made a record of the non-appearance.

Based on the testimony at the hearing, the Court believes that plaintiff's counsel Mr. Chaganti should be sanctioned for willful and bad faith disobedience to the Court's oral order of September 30, 2005. Mr. Chaganti admitted that he knowingly failed to comply with the Court's order. Mr. Chaganti did not participate in the preparation of a proposed order for the Court's signature and, most importantly, refused to schedule the remaining depositions as ordered. Mr. Chaganti is not short on excuses for why he failed to comply with the Court's order, but they are all without merit.

---

[5]Mediq's counsel also filed a Response to the Order to Show Cause along with an affidavit from attorney Craig Hoefer.

Mr. Chaganti's excuses are contradictory. First, Mr. Chaganti stated he hadn't had much communication with defendant's counsel and he wanted to get the documents that he requested for the deposition. That excuse is refuted because there are procedures that plaintiff could have used many months ago regarding discovery issues. Plaintiff could have filed a motion for protective order to prevent the deposition or a motion to compel. The Court has a discovery motion docket on the last Friday of every month. Prior to the Court's order on September 30, 2005, plaintiff and defendant had one telephone discovery hearing on June 23, 2005 and appeared at the discovery docket on August 26, 2005 where discovery motions both filed and unfiled were addressed. Next, Mr. Chaganti asserts that he didn't have time to do the depositions because he had other work to do and he couldn't arrange it with his client in time. The Court has been more than generous with the parties regarding the extension of discovery deadlines. The Court notes that the parties proposed the original deadlines in this case.[6] Mr. Chaganti has no excuse for not filing either the appropriate discovery motions or a motion for an extension of time.

Finally, in his motion for reconsideration, Mr. Chaganti asserts there was no meaningful opportunity to comply with the Court's order and it is a minor discovery dispute that the parties could have resolved informally. The Court agrees that scheduling deposition dates is a minor part of discovery and that the parties should have been able to resolve it without court intervention. Based on the testimony, evidence, and progression of this case, the Court strongly disagrees with Mr. Chaganti's assertion that he had no meaningful opportunity to comply with the Court's order. Even after the depositions were not completed during the week following the September 30, 2005 hearing,

---

[6]The Court issued an Order Setting Rule 16 Conference on October 15, 2004 ordering the parties to file a joint proposed scheduling plan with suggested deadlines. Plaintiff and Mediq attempted to file separate joint proposed scheduling plans, but the dates suggested were all the same. The Court generally adopted the dates with a few changes that were within a day or so of the parties' proposed dates.

11

there was a three week interval before the show cause hearing on October 28, 2005, during which plaintiff could have cooperated with defendant and scheduled the depositions.

Therefore, the Court finds that Mr. Naren Chaganti is in contempt of court and will be sanctioned for a willful and bad faith disobedience of the Court's order. The Court will order Mr. Chaganti to tender to Mediq's counsel $262.00 within ten (10) days of the date of this order for attorney's fees and court reporter's costs for failing comply with the Court's oral order of September 30, 2005.

## III. Defendant's Motion for Sanctions

Mediq filed a motion for sanctions for plaintiff's repeated willful refusal to appear for his deposition after being served with proper notice. Mediq requested that plaintiff's case be dismissed. Plaintiff asserted that he should not be sanctioned because Mediq did not turn over requested discovery, therefore, he should not be forced to submit to a deposition.

Federal Rule of Civil Procedure 37(b) addresses the available sanctions a Court may impose if a party does not comply with a court order to submit to a deposition. "If a party . . . fails to appear before the officer who is to take the deposition, after being served with a proper notice . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), or (C) of subdivision (b)(2) under this rule."[7] Fed. R. Civ. P. 37 (d). "In lieu of any order or in addition thereto, **the court shall**

---

[7] The sanction under Rule 37(b)(2)(A) is an order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order. The sanction available under Rule 37(b)(2)(B) is an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence. The sanction under Rule 37(b)(2)(C) is an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof or rending a judgment by default against the disobedient party.

**require the party failing to act or <u>the attorney advising that party</u> or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was <u>substantially justified or that other circumstances make an award of expenses unjust</u>**." Fed. R. Civ. P. 37 (d) (emphasis added). "A party may not properly remain completely silent even when he regards a notice to take his deposition . . . as improper and objectionable. If he desires not to appear . . . he must apply for a protective order." Fed. R. Civ. P. 37(d) advisory committee's note. Therefore, if the Court does not issue an order under Rule 37(b)(2)(A)-(C), or in addition to any order, the Court shall require the party failing to act or his attorney to pay reasonable expenses including attorney's fees if the failure was not substantially justified.

In this case, plaintiff's attorney willfully made a unilateral decision not to produce his client for a properly noticed deposition. Plaintiff's arguments regarding any discovery abuses by Mediq are irrelevant. Before the Court ordered the depositions to take place during the week following September 30, 2005, plaintiff had not filed any motions to compel or for protective order against defendant Mediq. When a party seeks relief regarding discovery disputes, appropriate motions must be presented to the Court according to the procedural rules of this Court.

Also, the Court is not required to tell plaintiff's attorney that he needs to file a motion to compel or motion for protective order. First, all counsel are expected to know and adhere to the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Missouri, and the specific requirements of this Court. Second, in the Case Management Order of December 3, 2004, the Court referred counsel to the district court website at [www.moed.uscourts.gov](www.moed.uscourts.gov) for a list of the Court's requirements. Third, plaintiff was able to file a motion to enforce subpoena against the City of Maryland Heights Police Department and to contest the equal allocation of mediation costs. As an officer of the Court who is expected to know the rules and procedures of this Court, plaintiff's

counsel cannot decide to follow the rules one day and pretend he has no idea what is happening the next day.

The Court finds that Mr. Chaganti's excuses for failure to produce his client were not substantially justified and it would not be unjust to award reasonable expenses. The Court believes that plaintiff's failure to appear at his deposition was solely caused by his counsel's refusal to cooperate in discovery and failure to comply with court orders. Therefore, the Court will sanction plaintiff's counsel and not plaintiff.

Mr. Chaganti asserts that the Court cannot impose sanctions because Mediq requested dismissal and not attorney's fees or costs. Mediq's request is of no consequence. Mr. Chaganti is directed to Federal Rule of Civil Procedure 37(d), which states that the court **shall** award reasonable expenses for failure to appear unless the failure was substantially justified or an award would be unjust. The Court has already found that Mr. Chaganti's failure was not substantially justified and an award would not be unjust. The Court will order plaintiff's counsel to pay defendant's attorney's fees and costs of the court reporter in the amount of $262.00 for failure to appear for the October 8, 2005, scheduled deposition. This sanction is the same sanction imposed by the Court for plaintiff's failure to comply with the Court's previous order.

**IV. Plaintiff's Motions for Sanctions**

Plaintiff filed two motions for sanctions. Plaintiff's first motion is titled "Plaintiff's Motion for Terminating Sanctions or Other Relief for the False Statements of Mediq/PRN Regarding its Relationship with David Armstrong, an Erstwhile Defendant in this Case." At the hearing, Mr. Chaganti argued that Armstrong should be "rescheduled" as a defendant and default judgment entered against him. Plaintiff's counsel states that Armstrong is "in privity" with Mediq and he should have appeared in the case. Mediq contends that Armstrong has not given any testimony so plaintiff has

no evidence that Armstrong has been "unduly influenced." Further, Mediq asserts that its counsel has affirmed in an affidavit that Armstrong has been counseled to give truthful testimony. (Def.'s Resp. to Pl.'s Mot. for Terminating Sanctions, Hoefer Aff. ¶ 4). As the Court stated at the hearing, the dismissal of Armstrong will not be revisited. If Armstrong testifies, plaintiff can address any bias and credibility issues at that time. Plaintiff's first motion for sanctions is denied.

Next, the Court will address "Plaintiff's Second Motion for Terminating Sanctions for Spoilation of Evidence and for Repeated Interference with Plaintiff's Efforts to Take Deposition of Assailant Thompson and Coconspirators Counts and Armstrong." In his motion, plaintiff accuses Mediq of intentionally destroying key documents in this case. Plaintiff states that defendant claims it could not find daily logs, stickers, Counts's letter to defendant's headquarters, and refused to produce Armstrong and Thompson's employment files and any written policies on workplace violence. Finally, plaintiff states that Mediq should have produced all of these documents in its Rule 26 disclosures or in response to plaintiff's Rule 34 requests. Plaintiff requests that the Court rule that plaintiff's case for wrongful termination is established.

Mediq responds that plaintiff completely disregarded the Federal Rules of Civil Procedure and has falsely accused it of concealing or failing to preserve documents. Mediq states that under Rules 26 and 34 it was not obligated to provide plaintiff with the materials. Also, Mediq asserts that plaintiff did not request some of the documents and they objected to other document requests. Finally, Mediq states that it gave plaintiff a copy of the employee handbook that contained the policy relating to inappropriate conduct at work and that the "daily logs" sought by plaintiff were destroyed prior to the onset of the lawsuit.

At the hearing, the Court reviewed plaintiff's discovery requests. First, plaintiff asserted that he wanted the daily logs. Defendant's counsel again informed Mr. Chaganti that the daily logs were

disposed of in a routine fashion prior to the filing of this case. Plaintiff's counsel then asked for a copy of defendant's document retention policy, and defendant's counsel responded that plaintiff had never before requested the policy. Defendant's counsel stated that plaintiff could depose a corporate representative for that information. The Court denied plaintiff's request as to the daily logs and told plaintiff's counsel he could ask defendant's corporate representative for information regarding a document retention policy.

Next, plaintiff's counsel asked the Court to require defendant to produce an EEOC file, Thompson's personnel file, and Armstrong's personnel file. Plaintiff's counsel asserts that defendant "has not produced a lot of documents in the case" and defendant said it would produce them before the hearing, but would not put it on the record. Plaintiff's counsel asserted that he wanted to know why Armstrong and Thompson were terminated. Defendant's counsel responded that although plaintiff had not made a valid document request, defendant produced to plaintiff's counsel all documents contained within Armstrong and Thompson's personnel files related to the altercation as well as to their terminations. Plaintiff's counsel asked when those files were produced. Defendant's counsel submitted an affidavit to the Court that those records were provided to plaintiff's counsel. ((Def.'s Resp. to Pl.'s Mot. for Terminating Sanctions, Hoefer Aff. ¶2). The Court accepted Attorney Hoeffer's affidavit and affirmation before the Court that he produced Armstrong and Thompson's personnel files related to the altercation and their terminations.

The Court asked plaintiff's counsel if he had anything else to present and he stated that he didn't know and wanted to put general comments on the record. The Court denied plaintiff's request. Plaintiff's second motion for sanctions is denied. Then, the Court ordered plaintiff to produce his client for deposition on November 5, 2005. Finally, the Court extended the discovery and dispositive motions deadlines in this case to November 30, 2005.

## V. Caution Regarding Further Obligations in this Case

Plaintiff and Plaintiff's Counsel are hereby warned that plaintiff's case will be dismissed if there is any further obstruction of the discovery process by plaintiff or plaintiff's counsel. Plaintiff suggests that the Court has favored defendant in this case. The review of the history of the case demonstrates that is not true. The extension of deadlines has worked to plaintiff's benefit because he has received two additional months to conduct discovery in this case and to file dispositive motions. Due to the Court's generosity, plaintiff's very belated discovery motions have been addressed more than once at the discovery docket. Plaintiff is fortunate because his counsel's actions could have resulted in the dismissal of this case.

The Court is not a party to this case. The Court does not take sides in a dispute. The Court's role is administer a fair and orderly management of its case docket until the cases are concluded. If a party does not follow court rules or procedure, there will be consequences. As an officer of the court, plaintiff's counsel should know that. The Court did not file plaintiff's lawsuit or bring plaintiff's case to federal court. The Court cannot help a plaintiff or defendant litigate its case. Plaintiff's counsel, not the Court, is responsible for litigating this case on behalf of plaintiff. All counsel are expected to be competent to handle the cases they bring to court. Mr. Chaganti would have fewer problems if he would read and follow the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Missouri, the Court's requirements, and Orders of the Court. Plaintiff's counsel may access all of these rules at www.moed.uscourts.gov.

Counsel should heed the Court's warning and adhere to the Court's orders and procedures carefully. Counsel should know that his conduct and failure to follow the rules could severely prejudice his client's case and lead to its dismissal.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's counsel Naren Chaganti shall pay Two Hundred and Sixty-Two Dollars ($262.00) made payable to Gallop, Johnson, and Neuman within 10 days of the date of this order for failure to comply with the Court's order and failure to appear at a properly noticed deposition of his client on October 8, 2005.

**IT IS FURTHER ORDERED** that defendant's motion for protective order is **GRANTED** as stated orally by the Court on September 30, 2005. [Doc. 55]

**IT IS FURTHER ORDERED** that plaintiff's first motion for sanctions is **DENIED**. [Doc. 57]

**IT IS FURTHER ORDERED** that defendant's motion for sanctions is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** to the extent that plaintiff's counsel will be sanctioned for failure to appear at a properly noticed deposition on October 8, 2005. The motion to dismiss plaintiff's case with prejudice is **DENIED**. [Doc. 58]

**IT IS FURTHER ORDERED** that plaintiff's second motion for sanctions is **DENIED**. [Doc. 61]

**IT IS FURTHER ORDERED** that defendant's motion to expedite hearing is **DENIED as moot**. [Doc. 63]

**IT IS FURTHER ORDERED** that defendant's motion for costs is **GRANTED**. [Doc. 69]

**IT IS FURTHER ORDERED** that plaintiff's motion for reconsideration of the Court's order is **DENIED**. [Doc. 70]

**IT IS FURTHER ORDERED** that the parties shall complete all discovery in this case by **November 30, 2005**.

**IT IS FURTHER ORDERED** that any motion to dismiss, motion for judgment on the pleadings, or motion for summary judgment shall be filed with the Clerk no later than **November 30, 2005**. The memorandum in opposition shall be filed with the Clerk by **December 30, 2005**. The reply brief, if any, shall be filed with the Clerk by **January 9, 2006**. Memoranda in support of or in opposition to a motion for summary judgment shall have attached a statement of uncontroverted material facts in separately numbered paragraphs with citations to the record, as required by Local Rule 4.01(E).

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 14th day of November, 2005.