# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

HARSH KATOCH,                        )
                                     )
            Plaintiff,               )
                                     )
      v.                             )            No. 4:04-CV-938 CAS
                                     )
MEDIQ/PRN LIFE SUPPORT SERVICES,     )
INC., et al.,                        )
                                     )
            Defendants.              )

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Mediq/PRN Life Support Services, Inc.'s

("Mediq") motion for summary judgment and plaintiff's motion to strike the affidavit of Lynne

Shapiro. The motions are now fully briefed. For the following reasons, the Court will grant

defendant's motion for summary judgment and deny plaintiff's motion to strike.

## I. Background

On February 11, 2004, plaintiff filed a first amended complaint against Mediq, David

Armstrong, and Brad Thompson. In his amended complaint, plaintiff alleged claims of employment

discrimination based on race, religion, color, national origin, age, and disability against defendants

Mediq, Thompson, and Armstrong under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e, and the Missouri Human Rights Act, MO. REV. ST. § 213.055 (2000).[1] Plaintiff also

alleged claims of failure to maintain a discrimination-free workplace; harassment and intimidation

based on a medical condition--diabetes; retaliation; assault and battery; negligent hiring, supervision,

---

[1]The Court notes that Title VII does not prohibit discrimination based on age or disability, although the MHRA does. See MO. REV. ST. § 213.055.1(1). Plaintiff's complaint does not reference either the American with Disabilities Act, 42 U.S.C. §§ 12101-122213 ("ADA") or the Age Discrimination in Employment Act, 29 U.S.C. § 632, et seq.

and retention; intentional infliction of emotional distress; negligent infliction of emotional distress; breach of contract; and breach of the covenant of good faith and fair dealing against defendant Mediq. Finally, plaintiff asserted claims of assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress against defendants Brad Thompson and David Armstrong. The Court granted defendant's motion dismissing plaintiff's employment discrimination claims under Title VII and the MHRA against Thompson and Armstrong and dismissing the tort claims against Mediq. (Order of April 6, 2005). On August 25, 2005, the Court dismissed defendants Armstrong and Thompson for failure to serve them with process in a timely manner. The remaining claims in this action and at issue here are plaintiff's claims in Count I-Employment Discrimination based on Religion/Hindu, race/East Indian, Color/Brown, and National Origin/East Indian, Count II Failure to Maintain a Discrimination Free Workplace, Count III-Harassment and Intimidation based on Medical Condition-Diabetes, Count IV- Retaliation, Count IX- Breach of Contract, and Count X-Breach of Covenant of Good Faith and Fair Dealing.

## II. Motion to Strike Affidavit of Lynne Shapiro

Plaintiff filed a motion to strike the affidavit of Mediq's former Vice-President Lynne Shapiro. Mediq filed a response and plaintiff filed a reply memorandum. In support of his motion, plaintiff asserts that the affidavit must be stricken as a matter of law because (1) Mediq failed to identify Shapiro as part of the defendant's obligations under Fed. R. Civ. P. 26, (2) Shapiro's affidavit shows Mediq is using her as an expert witness without expert designation or an expert report, (3) her affidavit gives argument not fact, (4) Shapiro lacks personal knowledge and uses the passive voice constituting double, triple, and quadruple hearsay, (5) the affidavit states certain facts did not occur, and (6) Shapiro gave "encyclopedic knowledge" of the events in the company without actual knowledge or supporting documents dated before plaintiff's termination. Further, plaintiff requests

Rule 11 sanctions against Mediq and its attorneys. Mediq asserts that Shapiro was identified as an individual who had discoverable information to support its defenses, possessed information relating to its investigation and correction of alleged discrimination and that it did not have to supplement its disclosures and identify Shapiro as the decision-maker because that information was made known to plaintiff during the discovery process. The Court will address plaintiff's arguments in turn.

### 1. Rule 26(a) Disclosures

Federal Rule of Civil Procedure 26(e)(1) provides:

> A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Plaintiff asserts that the Court should strike Shapiro's affidavit because she was identified as a person with information about the company's policies, not as the sole decision maker who decided to discharge plaintiff. Also, plaintiff asserts that Mediq did not disclose her name, address, or telephone number and only referred to Shapiro as a "former member of Mediq's Human Resources Department." Mediq responds that Shapiro was identified in its Rule 26(a) disclosures and plaintiff found out that Shapiro was the decision maker during discovery.

The Federal Rules of Civil Procedure provide:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

FED. R. CIV. P. 37(c)(2). In this case, the failure to disclose Shapiro was harmless, therefore, Shapiro's affidavit will not be stricken because of a failure to disclose. First, Shapiro was identified in Mediq's initial disclosures stating she had information regarding Mediq's corporate policies.

Mediq's disclosure of Shapiro stated as follows: "(I) Lynne Shapiro, who possesses information regarding the reasonable care exercised by Mediq to prevent and promptly correct any discriminatory or harassing conduct in the workplace, Defendant's employment policies and practices, the at-will status of Plaintiff's employment, the efforts made by Mediq to investigate Plaintiff's workplace complaints . . . ." (Pl.'s Mot. to Strike, Ex. A). This is different from other cases where the witness was not disclosed at all or had testimony wholly different from the Rule 26(a) disclosure. See Mawbry v. United States, 999 F.2d 1252, 1254 (8th Cir. 1993) (summary judgment reversed after defendant introduced surprise witness who had not been disclosed and plaintiff had specifically sought such information in discovery requests).

Second, the Court finds that plaintiff became aware that Shapiro was the decision maker during discovery. The Court notes that in support of his motion for summary judgment, plaintiff has submitted the deposition and police report[2] of Officer Kendra Miller. The police report of Officer Kendra Miller contains the following: "Counts advised his recommendation had been to fire both Katoch and Thompson but the corporate office overruled him and only fired Katoch." (Report p. 7). The bottom of the police reports states that it was printed on 8/26/2005 at 3:54 p.m. Officer Kendra Miller was deposed on September 28, 2005. In her deposition, Officer Miller testified, "He also-- Mr. Counts told me his recommendation had been to fire both Katoch and Thompson but the corporate office overruled him and only fired Katoch." (Miller Dep. 28:6-9). Officer Miller testified based on

---

[2]The Court notes that plaintiff submitted the police report in its courtesy copy to the Court, but did not file this document, among others, electronically. Defendant references the document so the Court assumes it also has a copy. On January 5, 2006, the Court ordered the Court Clerk to delete plaintiff's first memorandum in opposition to summary judgment because plaintiff filed a brief exceeding the page limitations. The Court ordered plaintiff to re-file all of the documents attached to the memorandum. On February 2, 2006, the Court again ordered plaintiff to re-file his statement opposing defendant's statement of uncontroverted facts and plaintiff's evidence because defendant referenced the document, but the document was not on file. Counsel should be more careful with the filing of documents that may be relevant to his client's case.

the information in her report. (Miller Dep. 7:1-10:25). Therefore, no later than September 28, 2005, plaintiff knew there was a possibility that someone other than Counts made the decision to fire plaintiff. There is no evidence that plaintiff even attempted to discover the identity of the person in the corporate office who made this decision. On November 23, 2005, Chris Counts was deposed in this action and repeatedly stated that Shapiro instructed Counts on investigating the altercation between plaintiff and Thompson and made decisions affecting plaintiff's employment at Mediq, including plaintiff's termination. (Counts Dep., pp. 147, 247, 254, 257-58, 262-64, 292, 294).[3]

The first time that plaintiff's counsel protested not knowing the name of the corporate representative or seeking to set a deposition date with Shapiro was December 11, 2005. (Def.'s Mem. in Opp'n to Mot. to Strike, Ex. E). At that time, Mediq had already filed its motion for summary judgment. Even then, plaintiff did not mention anything about Shapiro being deposed because she was the decision maker. This was after two extensions of the discovery and dispositive motion deadlines in this case.[4] Plaintiff had multiple opportunities to depose Shapiro. Plaintiff cannot claim prejudice after the fact when he knew before the discovery deadline and before defendant's motion for summary judgment that Shapiro had not been deposed, especially after the deposition of Counts. Therefore, the Court finds that defendant's failure to supplement its Rule 26 disclosures was harmless and will not strike Shapiro's affidavit for this reason.

---

[3]Plaintiff assets that he was misled because defendant's initial disclosures stated that Counts would testify regarding "the events underlying his discharge, the nondiscriminatory and non-retaliatory basis for Plaintiff's discharge." Counts did testify to those issues in his deposition. Counts testified that he interviewed Katoch and Thompson regarding their altercation and that he reported that conversation to Lynne Shapiro.

[4]The original discovery deadline was September 15, 2005. The Court granted new discovery deadlines of September 30, 2005 and November 30, 2005. Thus, the parties had two extra months of discovery in this action. The fault in delaying the scheduling of witness depositions does not lie with the Court.

The Court notes that any problems with disclosure could have been avoided had the original deadlines in this case been met. The depositions in this case were taken very close to the last extended discovery deadline. Unnecessary time was expended and expenses incurred because of the non-cooperation of plaintiff's counsel, the filing of frivolous motions, and the need for Court hearings and sanctions during the last three months of discovery.

### 2. Affidavit Requirements under Rule 56(e)

Federal discovery rules require that affidavits supporting or opposing a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e). Plaintiff asserts that Shapiro's affirmation statement demonstrates that she does not have personal knowledge, therefore her affidavit is inadmissible. In her affidavit, Shapiro asserts, "I, Lynne Shapiro have read and understand the preceding fourteen (14) paragraphs. I confirm their truth and accuracy to the best of my knowledge, information, and beliefs." Mediq responds that the statements regarding what others said are not given to prove the truth of the matter asserted, but to show Shapiro's state of mind and the basis of her decisions regarding plaintiff.

The Court agrees. See Fed. R. Evid. 801 ("Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). In reviewing the Shapiro affidavit, the Court does not have to believe anything that Shapiro states someone else told her. Shapiro can offer statements made by others to show why she made certain decisions regarding plaintiff without attempting to prove that the statements were true. Accordingly, Shapiro's affidavit will not be stricken on this basis.

### 3. Expert testimony

Pursuant to Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure, a party is required to disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703 or 705 of the Federal Rules of Evidence. Plaintiff asserts that Mediq is using Shapiro as an expert witness without an expert designation or expert report. This argument is without merit. Mediq has not asserted in any court filings that Shapiro is an expert. Shapiro's affidavit does not contain anything that could be construed as the offering of expert testimony. "A lay witness's testimony in the form of opinions or inferences need only be rationally based on perception and helpful to a determination of a fact issue." Burlington Northern Railroad Co. v. State of Nebraska, 802 F.2d 994, 1004 (8th Cir. 1986). "Personal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience, is a sufficient foundation for lay opinion testimony." Id. at 1004-5. Shapiro may testify about her review of company documents that were prepared in the ordinary course of business without being designated as an expert witness.

### 4. Perjury

Next, plaintiff asserts that the Court cannot accept Shapiro's affidavit because Shapiro did not assert that the affidavit was made under penalty of perjury. The Court finds that Shapiro's affidavit is sufficient. An affiant may either swear to the truth of an affidavit before a notary public or sign the document under penalty of perjury. See Pfeil v. Rogers, 757 F.2d 850, 859 (7th Cir. 1985). Shapiro's affidavit was sworn to before and certified by a notary public. Shapiro's affidavit will not be stricken because it was not made under penalty of perjury.

### 5. Rule 11 Sanctions

Finally, plaintiff requests that the Court sanction Mediq and its attorneys under Federal Rule of Civil Procedure 11 as well as under 28 U.S.C. § 1927 "because such frivolous paper should not have been filed in any court." The Court finds that plaintiff's request for sanctions is unwarranted. The motion is not in compliance with Federal Rule of Civil Procedure 11(c) nor does it offer any basis to find that Mediq or its attorneys have "unreasonably and vexatiously" multiplied the proceedings.

Accordingly, plaintiff's motion to strike the affidavit of Lynne Shapiro will be denied in its entirety.

## III. Summary Judgment Standard

The Court will now address plaintiff's remaining claims in his first amended complaint. The claims are as follows: breach of contract, breach of covenant of good faith and fair dealing, employment discrimination based on race, color, national origin, religion, disability, and age, failure to maintain a discrimination free workplace, and retaliation.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and his entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c).

Once the moving party has met his burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 257; City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Additionally, this Court is "'not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.'" White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir. 1990) (quoting InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)). In passing on a motion for summary judgment, it is not the court's role to decide the merits. On a motion for summary judgment, the court should not weigh evidence or attempt to determine the truth of a matter. Rather, the court must simply determine whether a genuine issue of material fact exists. Bassett v. City of Minneapolis, 211 F.3d 1097, 1107 (8th Cir. 2000).

### A. Facts

The Court finds the following facts as true for purposes of summary judgment.[5] Plaintiff began his employment with Mediq on November 10, 1999. Prior to being employed by Mediq, plaintiff had not been previously employed as a biomedical technician, nor had he completed any educational or training programs in biomedical technology. Plaintiff's offer of employment letter stated that his employment was on an at-will basis and could be terminated at any time by either party with or without cause. The offer of employment letter did not have a time duration for plaintiff's employment. Plaintiff signed the offer of employment letter. Plaintiff also received and signed an "At-Will Policy Acknowledgment Form" and the Employee Handbook. Both of these documents required plaintiff's signature acknowledging that his employment was at will.

Initially, plaintiff was assigned to perform biomedical equipment repair on location at one of Mediq's clients, Barnes-Jewish Christian Hospital in St. Louis, Missouri. During his employment with Mediq, plaintiff received a poor rating in initiative and communication on his performance evaluations. In 2000, plaintiff's co-worker Chris Counts, who had been employed by Mediq for seven years, was promoted to a lead biomedical technician position. On a performance evaluation from December 19, 2000, plaintiff received a poor rating in initiative and the evaluation noted that plaintiff needed to expand his knowledge of other equipment and increase his level of output.

---

[5]The Court notes that plaintiff submitted the full deposition transcripts of Chris Counts, Brad Thompson, Officer Miller, and Dave Armstrong, which exceeded 700 pages, in opposition to defendant's motion for summary judgment. Plaintiff requested that the Court take judicial notice of Brad Thompson's guilty plea as well as the entire deposition transcripts. The Court will decline to do so. Simply providing a massive record does not satisfy plaintiff's burden of identifying and providing evidence of specific facts creating a triable controversy, and the Court will not sort through a voluminous record in an effort to find support for the plaintiff's allegations. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113-14 (8th Cir. 2004) (per curiam). It is plaintiff's duty to direct the Court to the evidence supporting his claim.

While employed at the Barnes-Jewish Christian Hospital location, plaintiff submitted written complaints about two employees with whom he worked, Lisa Settles and Jim Urness. In his deposition, plaintiff acknowledged that the alleged harassment by Settles was not based on his race, religion, or national origin. (Katoch Dep. 172:12-20). Other than the written complaints against Settles and Urness, Katoch did not submit any other written complaints about employees to Mediq during his employment with the company. While Katoch was employed at the Children's Hospital location, no employees of Mediq directly harassed him. When Katoch complained that employees of Children's Hospital were harassing him, Mediq notified those employees' supervisor of the harassment.

During his employment with Mediq, Katoch had diabetes. Mediq allowed Katoch to take breaks as needed to ingest sugar to control his diabetes. Although Katoch may have had episodes where his blood sugar levels dropped and he needed to eat food containing sugar, his condition was stable. Katoch's diabetes did not prevent him from being able to work as a biomedical technician. Katoch previously had breast cancer, but treatment for the breast cancer was complete at the time he began employment with Mediq.

On May 19, 2003, Katoch and his co-worker Brad Thompson were involved in a physical altercation. Chris Counts, Mediq branch manager, talked to Thompson and Katoch about the incident on May 20, 2003. Chris Counts reported the incident to Human Resources Vice-President Lynne Shapiro and eventually recommended that Katoch and Thompson be fired. Katoch was terminated by Mediq a few days after the altercation. Katoch reported the incident to the Maryland Heights police department and Thompson was eventually arrested for assault. Mediq fired Thompson sometime in June 2003.

### B. Breach of Contract

Mediq asserts that plaintiff's claim for breach of employment contract fails because plaintiff was an at-will employee. Plaintiff asserts that Mediq misstates the case.

Under Missouri's employment at will doctrine, "an employer can discharge– with or without cause– an at-will employee and still not be subject to liability for wrongful discharge." Bishop v. Shelter Mutual Ins. Co., 129 S.W.3d 500, 502 (Mo. Ct. App. 2004) (citing Dake v. Tuell, 687 S.W.2d 191, 193 (Mo. 1985) (en banc)).[6] "An essential element to an employment contract is a statement of duration. Without a statement of duration, an employment at will is created which is terminable at any time by either party with no liability for breach of contract." Adcock v. Newtec, Inc., 939 S.W.2d 426, 428 (Mo. Ct. App. 1996).

The Court finds that plaintiff cannot sustain a breach of contract claim. First, there is no signed document between Mediq and plaintiff setting a term of duration for plaintiff's employment. A term of duration is an essential element of an employment contract. Luethans v. Washington University, 894 S.W.2d 169, 172 (Mo. 1995) (en banc). Plaintiff has not submitted any document meeting this requirement. Second, plaintiff signed three documents acknowledging that he was employed with Mediq as an at-will employee. He signed the offer of employment, which states,

> Please be advised that employment with MEDIQ/PRN Life Support Services, Inc. is on an at-will basis and your employment may be terminated at any time by you, or by MEDIQ/PRN, with or without cause. The at-will nature of your employment cannot be changed, except as by a written document signed by you and the President of MEDIQ/PRN Life Support Services.

(Shapiro Aff., Ex. 4). Then, plaintiff also signed an "At-Will Policy Acknowledgment Form," which provided:

---

[6] The parties agree that Missouri law applies.

You are employed by MEDIQ/PRN, on an at-will basis, and your employment may be terminated at any time by you, or by MEDIQ/PRN, with or without cause.

The at-will nature of your employment may not be changed except by a written document signed by you and the President of MEDIQ/PRN.

(Shapiro Aff., Ex. 5). Finally, plaintiff signed an "Acknowledgment of Receipt of Handbook." This document also had a statement similar to the above statements, asserting that plaintiff was an at-will employee. (Shapiro Aff. Ex. 6). Plaintiff acknowledges that he read and signed these documents. (Pl.'s Dep. 37:16-25, 41:5-20, 42:1-24, 43:8-16). Because plaintiff was an at-will employee, "the reason for [his] termination is inconsequential and irrelevant, unless the firing violates a statute or public policy." Bishop, 129 S.W.3d at 506.

Plaintiff's contends that the "employment at will" clause was not the sole "contractual clause." Plaintiff asserts that Mediq breached a contract with him because it did not comply with equal employment principles. Plaintiff's rights under the equal employment opportunity laws are not derived from any contract with Mediq. Plaintiff has not produced a contract with Mediq that contains definite terms. General policy statements that Mediq will comply with federal and state anti-discrimination laws are insufficient to create contractual rights. See Miller v. Certain Teed Corp., 971 F.2d 167, 172 (8th Cir. 1992) (employee manual and employer statements of policy do not form the basis for a contract offer). Plaintiff's equal employment rights are derived from state and federal statutes, which plaintiff has asserted in this lawsuit pursuing claims under Title VII and the MHRA. See Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, Missouri Human Rights Act, MO. REV. ST. § 213.055 (2000). Based on these facts, the Court will grant Mediq's motion for summary judgment on plaintiff's breach of contract claim.

### C. Breach of Covenant of Good Faith and Fair Dealing

The Court finds that plaintiff's claim of the breach of the covenant of good faith and fair dealing also fails as a matter of law.[7]  Plaintiff asserts that Missouri law recognizes an implied covenant of good faith and fair dealing in every contract.  Plaintiff's assertion is correct, but no Missouri court has recognized the tort in an at-will employment situation.  "Missouri law concerning at will employees may not be circumvented by an employee who alleges a contract of covenant of good faith and fair dealing between the employer and employee."  Neighbors v. Kirksville College of Osteopathic Medicine, 694 S.W.2d 822, 824 (Mo. Ct. App. 1985).

> [T]he Missouri employment at-will doctrine expressly prohibits any consideration of the implied covenant of good faith and fair dealing inherent in all contracts when an employer is sued for terminating the employee.  This follows because the implied covenant cannot be used to contradict or override the express employment terms contained in a contract, i.e., that an employee can be terminated for any cause.  When a contract does not provide a definite period for employment and fails to include the provisions related to reasons for termination, the good faith and fair dealing covenant cannot be implied to supercede the express agreement that the employee can be fired without cause.

Bishop, 129 S.W.3d at 506.  Plaintiff cannot maintain this action under Missouri law.  Therefore, the Court will grant Mediq's motion for summary judgment on plaintiff's claim of breach of the covenant of good faith and fair dealing.  As stated previously, plaintiff can pursue any claims of employment discrimination based on protected factors under applicable federal and state law.

### D. Discrimination under Title VII

In his first amended complaint, plaintiff asserts claims that Mediq discriminated against him based on his race, color, national origin, and religion in violation of Title VII and the MHRA.[8]  In its

---

[7]The parties agree that Missouri law governs this claim.

[8]Title VII analyses and conclusions of law apply to claims under the MHRA.  See, e.g., Herrero v. St. Louis Univ. Hosp., 109 F.3d 481, 483 (8th Cir. 1997).

memorandum in support of summary judgment, defendant asserts that plaintiff cannot establish a prima facie case or demonstrate that Mediq's stated reason for terminating plaintiff was pretextual. Plaintiff responds that he has direct evidence of employment discrimination.

### 1. Exhaustion of Administrative Remedies under Title VII, ADA, and ADEA

Under Title VII, plaintiffs must follow administrative procedures and exhaust administrative remedies by timely filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) before filing suit in federal court.[9] 42 U.S.C. § 2000e-5(e)(1); see E.E.O.C. v. Commercial Office Prods. Co., 486 U.S. 107, 110-12 (1988); Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir. 1996). "Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." Shannon, 72 F.3d at 684 (quoting Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994)). If a plaintiff were allowed to bring a claim outside the scope of the EEOC charge, it would "circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge . . . ." Williams, 21 F.3d at 223 (quoting Babrocky v. Jewel Food Co., 773 F.2d 857, 863 (7th Cir. 1985)).

"A plaintiff 'may seek relief for any discrimination that grows out of or is reasonably related to the substance of the allegations in the administrative charge.'" Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 838 (2002) (citing Nichols v. American Nat'l Ins. Co., 154 F.3d 875, 886-87 (8th

---

[9]The ADEA and MHRA similarly require exhaustion of administrative remedies by filing a charge of discrimination with the EEOC or Missouri Commission on Human Rights. See 29 U.S.C. § 626(d); Mo. Rev. Stat. § 213.075.1 (200); see Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1327 (8th Cir. 1995) (ADEA); Gipson v. KAS Snacktime Co., 83 F.3d 225, 228 (8th Cir. 1996) (MHRA).

Cir. 1998)). Courts "liberally construe an administrative charge for exhaustion of remedies purposes," but courts also recognize the "difference between liberally reading a claim, which lacks specificity and inventing . . . a claim which simply was not made." <u>Shelton v. The Boeing Co.</u>, 399 F.3d 909, 912 (8th Cir. 2005). "The breadth of the civil suit is . . . as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination." <u>Dorsey</u>, 278 F.3d at 838 (citing <u>Stuart v. General Motors</u>, 217 F.3d 621, 630-31 (8th Cir. 2000)).

In this case, plaintiff filed a charge of discrimination based on race, color, religion, age, retaliation, national origin, disability, and ancestry on September 19, 2003. Plaintiff's charge also indicated that the earliest date of discrimination was September 2001 and the latest date was May 20, 2003. Plaintiff asserted the following in his charge of discrimination:

1. My race and national origin and ancestry is East Indian. My color is brown. I am a Hindu by religion. I am over 40 years of age. I have a physical handicap, diabetes, which is a handicap within the meaning of the Missouri Human Rights Act.

2. At work I was harassed and discriminated for over two and one half years, which harassment increased after September 11, 2001 attacks against the United States. I was subjected to strip searches, repeated comments regarding my race, color, religion, and age. My supervisor and coworkers complained that I was slow at work and when I took medication.

3. I was discharged on May 20, 2003. The reason given for my discharge by the company was behavioral problems. This was subsequent to an incident in which Eric Thompson, another white employee assaulted me at work. This assault followed my last complaint of discrimination, within a short time, thus raising an inference of retaliation.

4. Respondent has been aware of my handicap, diabetes and I was a cancer patient, since I started work there in 1999. My handicap was unrelated to my ability to perform my duties. My work was good.

5. I was at all times performing my job duties in a satisfactory manner. In fact I was given a performance report of very, very good.

6.   My performance was good as that of Chris Counts (white) who was not discharged.  I was the most qualified person at that place.  I have taken coursework in mircobiology, college credit hours, biomedical certification from Mediq/PRN, and I have a bachelor's degree.

(Shapiro Aff., Ex. 14).

Mediq asserts that the Court should limit its analysis to plaintiff's claims of harassment, termination, retaliation, and disability discrimination as set forth in his EEOC charge.  Plaintiff responds that he amended his charge by writing a letter to the EEOC and the EEOC amended the charges and issued a right to sue letter in February 2004.  Plaintiff's first amended complaint asserts additional claims of wage discrimination, a pattern and practice of racial, religious, color, and national origin discrimination, harsh and unreasonable employment standards, harsher discipline, conspiracy to coerce non-white employees to abandon employment, failure to promote,  and threats of termination and retaliation for objecting to repairing equipment with used parts.  (Am. Compl. ¶¶ 7-9,18).

Based on the foregoing, Court will limit its analysis to the claims asserted in plaintiff's charge of discrimination and claims that are reasonably related to them.  The Court notes that the purported amendment to plaintiff's EEOC charge is not in the court record.  The additional claims in plaintiff's complaint for wage discrimination based on race, pattern and practice discrimination based on race, denials of promotion based on race, retaliation for replacing defective parts with parts from other defective machines, lack of diversity of work assignments, and different employment standards are not reasonably related to plaintiff's claims of harassment, retaliation, and disability discrimination claims based on race, color, national origin, age, religion, and disability in the EEOC charge.  See Dorsey, 278 F.3d at 838 (claims for failure to promote not broad enough to encompass hostile work environment claim); Noreuil v. Peabody Coal Co., 96 F.3d 254, 258-59 (7th Cir. 1996) (disparate

impact claim in complaint is not reasonably related to disparate treatment or retaliation claims in EEOC charge); <u>Taylor v. Catholic Cemeteries of the Archdiocese of St. Louis</u>, No. 4:04CV549 SNL, 2005 WL 2090798 at *5-6 (E.D. Mo. 2005) (claims of wage discrimination and harassment not related to failure to hire); <u>Sickinger v. Mega Sys., Inc.</u>, 951 F. Supp. 153, 156 (N.D. Ind. 1996) (sexual harassment is separate conduct from termination, failure to promote, or payment of unequal wages).

Additionally, plaintiff's claims for discrete discriminatory or retaliatory acts occurring outside the limitations period will not be considered by the Court. Under Title VII and the ADEA, a charge of discrimination must be filed with the EEOC or the MCHR within 180 days after the occurrence of the last allegedly discriminatory act; this is extended to 300 days because Missouri law also prohibits such discrimination. <u>See</u> <u>Dring v. McDonnell Douglas Corp.</u>, 58 F.3d 1323, 1327-28 (8th Cir. 1995); 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d).

Finally, the Court will not allow plaintiff to assert claims under 42 U.S.C. § 1981, Title VI of the Civil Rights Act of 1964, or the Safe Medical Devices Act, 21 U.S.C. §331(h). Plaintiff's first amended complaint does not assert any claims under § 1981, Title VI, or the Safe Medical Devices Act. A party cannot assert a new theory of his case in defending a summary judgment motion or expand a claim to create a material issue of fact where none existed before. <u>See</u> <u>Wilson v. Westinghouse Electric Corp.</u>, 838 F.2d 286, 288-89 (8th Cir. 1988); <u>Sorenson v. First Wisconsin Nat'l Bank of Milwaukee, N.A.</u>, 931 F.2d 19, 21 (8th Cir. 1991). A claim raised for the first time in opposing summary judgment is not properly before the district court. <u>Cofer v. Schriro</u>,17 F. App'x 504 (8th Cir. 2001) (unpublished per curiam). The Court notes that plaintiff did file a motion to amend his complaint to include such claims on November 21, 2005, but the Court denied that motion without prejudice because plaintiff failed to attach a copy of the proposed amended pleading as

18

ordered in the Court's Case Management Order. Therefore, the Court will not consider any of plaintiff's claims under §1981, Title VI, or the Safe Medical Devices Act.

### 2. Race, Color, National Origin, and Religious Discrimination under Title VII

The Court will now address plaintiff's evidence of discrimination based on his race, color, national origin, and religion.[10]

### a. Termination

Plaintiff asserts that he has direct evidence of employment discrimination regarding his termination and hostile work environment claims. "To present direct evidence of discrimination, [plaintiff] must establish that evidence of conduct or statements by persons involved in the decision making process . . . may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the factfinder to find that the attitude was more likely than not a motivating factor in the employer's decision." Simmons v. Océ-USA, Inc., 174 F.3d 913, 915 (8th Cir. 1999) (internal citations omitted).

---

[10]In plaintiff's discussion of his "Title VII harassment and discharge" he states, "We remove most legal citations because of the unjustified page restrictions and refer to the earlier documents." Plaintiff's removal of legal citations is not warranted and the Court will not make references to any unspecified "earlier documents." Any earlier documents submitted for summary judgment were deleted from the Court's electronic case management system, therefore the Court does not have access to them. If the Court had access, the Court would not consider such documents because most of plaintiff's opposition memorandum is filled with page-long ramblings and lengthy footnotes containing nonsensical or irrelevant information. See e.g., Pl.'s Opp'n Mem., nn. 2, 4, 12, and section VII. Plaintiff's opposition memorandum is also laced with several unprofessional and clearly inappropriate comments about the parties and attorneys involved in this case. If plaintiff's unnecessary comments had been omitted, plaintiff would have had several additional pages free for legal citation.

In his first amended complaint, plaintiff asserts that he was subject to verbal harassment increasingly after the September 11, 2001 terrorist attacks.[11]  Plaintiff states that his supervisor Counts subjected him to a pat down search once at a staff meeting and made him empty his pockets claiming that plaintiff could have brought a weapon to work.  (Am. Compl. ¶ 13).  Further, plaintiff contends that Counts made comments that "he would line up all Indians and shoot them" and that Counts and other Mediq employees made several insulting jokes and comments regarding plaintiff's race, color, religion, and age.  (Am. Compl. ¶ 14).  Plaintiff also asserted that fellow employee Steward Kyland "made several racist and harassing remarks to [him] on a regular basis, including that Kyland would "burn down the Hindu temple" and that Kyland was a killer, to intimidate plaintiff. Plaintiff claimed that Ed "Eddie" West harassed plaintiff along with Brad Armstrong by making jokes about Indian food and that Indians were snake charmers.[12]

In evaluating plaintiff's termination claim, the Court must distinguish "comments which demonstrate a discriminatory animus in the decisional process from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process."  Breeding v. Arthur J. Gallagher and Co., 164 F.3d 1151, 1157 (8th Cir. 1999).  The

_____

[11]Plaintiff's charge stated that he was harassed at work for over two and one half years. Plaintiff's charge stated that he was discriminated against from September 11, 2001 until his termination on May 20, 2003.  In his deposition, plaintiff testified that he was not discriminated against by any Mediq employees based on any protected factors while employed at the BJC Hospital facility.

[12]In his opposition memorandum, plaintiff also stated that Armstrong and others repeatedly referred to him as "Hindu," "terrorist," and "smelly Hindu."  Plaintiff also alleges that there was a picture of Osama bin Laden on the wall.  Plaintiff contends that there was use of the "N" word at work regularly, North County jokes were made, and he was "repeatedly compared to the 9/11 terrorists."  Further, plaintiff states that there were multiple jokes about his ethnicity, food, and music by co-workers.    There was an additional comment plaintiff cited in his memorandum, but that comment was not supported by the record cited and the Court believes that the questioning was inappropriate.  Cf. Pl.'s Dep. 188:8-21 and Armstrong Dep. 70:5-19.

statements made by plaintiff's co-workers Kyland, West, and Armstrong were made by non-decisionmakers. The Court notes that Armstrong wrote a statement describing the incident between Katoch and Thompson, but Armstrong's statement was not dispositive of the investigation into the altercation. The comments made by Counts and Counts's actions at the staff meeting were unrelated to the decisional process in plaintiff's termination. According to Counts and not refuted by the plaintiff, Counts asserted that he patted down Ed West and Kyland Steward before plaintiff entered the room at the staff meeting.[13] Plaintiff cannot show that there was a connection between the comments and actions and the decision to terminate him. Defendant has established that Lynne Shapiro made the decision to terminate plaintiff. Plaintiff has no evidence that Shapiro considered his race, color, national origin, or religion in making that decision or that the decision to fire him because of the altercation was a pretext for race discrimination.

Because plaintiff does not have direct evidence of discrimination regarding his employment, the Court will analyze plaintiff's claim under the burden shifting analysis of McDonnell Douglas v. Green, 411 U.S. 792 (1973). To make a prima facie case of discrimination, plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for his position as biomedical technician, (3) he was discharged, and (4) the discharge occurred in circumstances which give rise to an inference of unlawful discrimination. Johnson v. A T & T Corp., 422 F.3d 756, 761 (8th Cir. 2005). The Court assumes that plaintiff satisfied the first three factors regarding his race, color, national origin, and

---

[13]At his deposition, Counts testified, "we were joking around, . . . to relieve some of the tension after 9/11 because of how serious it was. This is – I said 'Before you know it, you are going to have to be patted down when you come to work,' and I patted down Ed West, and I believe Kyland Steward, and Harsh came in, 'Oh, your turn Harsh,' patted him down. He laughed, thought it was funny." (Counts Dep. 334: 3-11).

religion. It is unclear that plaintiff has evidence to support the fourth factor, but the Court will assume that plaintiff has made a prima facie case.

Now, the burden shifts to Mediq to offer a legitimate nondiscriminatory reason for terminating Katoch. McDonnell Douglas, 411 U.S. at 802-03. Mediq asserts that Katoch was fired for provoking an altercation with Thompson. As a result of the investigation, Mediq believed that plaintiff struck Thompson and should be terminated. (Shapiro Aff. ¶ 39). The employer's burden at step two of the McDonnell Douglas analysis is one of production not proof. Krenik v. County of Le Sueur, 47 F.3d 953, 958 (8th Cir. 1995). If Mediq believed that Katoch instigated a physical altercation with a co-worker, that is a legitimate nondiscriminatory reason for terminating an employee. Mediq meets its burden at the second step.

Next, plaintiff must present evidence sufficient to (1) create a fact issue as to whether the employer's proffered reasons are mere pretext, and (2) create a reasonable inference that the adverse employment decision was an intentional act of race, color, national origin, or religious discrimination. Carter v. St. Louis University, 167 F.3d 398, 401 (8th Cir. 1999) (citing Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996)). In support of his pretext argument, plaintiff presents evidence that Thompson was on paid leave for a month after the altercation and then was fired. Plaintiff also contends that pretext is shown because Thompson and Armstrong's accounts of the altercation have discrepancies and Shapiro made the decision from headquarters.

The Court finds that plaintiff has not met his burden to create a fact issue regarding Mediq's proffered reason or which creates a reasonable inference that the employment decision was based on the protected factors. First, an employer can make a business decision as to whether it should fire an employee for the employee's involvement in a physical altercation with another co-worker. Second, although Thompson and plaintiff were involved in the altercation, based on its investigation,

Mediq determined that plaintiff should be fired immediately because Mediq believed that plaintiff was at fault. It is not unreasonable for a business to terminate an employee believed to have initiated a physical altercation. The relevant inquiry is not whether plaintiff was actually at fault, the relevant inquiry is whether Mediq honestly believed that plaintiff was at fault. If Mediq was mistaken in its belief, that does not automatically prove that Mediq intentionally discriminated against plaintiff. See Johnson, 422 F.3d at 763 (defendant's incorrect belief that plaintiff made bomb threats does not automatically prove that defendant was motivated by unlawful discrimination); Scroggins v. University of Minnesota, 221 F.3d 1042 (8th Cir. 2000)(it was irrelevant whether plaintiff was guilty of taking an unauthorized break, the relevant inquiry is whether the university believed he was guilty of the conduct justifying discharge). Third, Thompson was discharged when Mediq discovered that Thompson had been charged with assault by the Maryland Heights Police Department because of the incident with plaintiff. (Shapiro Aff. ¶ 13). Based on the foregoing, plaintiff has not shown a fact issue regarding Mediq's reason for his termination was pretextual or that his termination was due to intentional discrimination in violation of Title VII.

### b. Hostile Work Environment

Next, the Court will address plaintiff's claim of a hostile work environment. "To establish a hostile work environment claim, [Katoch] must show (1) he is a member of a protected class, (2) he was subject to unwelcome harassment, (3) the harassment was based on a protected characteristic under Title VII, (4) the harassment affected a term, condition, or privilege of employment, and (5) employer liability." Al-Zubaidy v. Tek Indus., Inc., 406 F.3d 1030, 1038 (8th Cir. 2005). Federal harassment standards are demanding. See Al-Zubaidy, 406 F.3d at 1038 (citing McCurdy v. Arkansas State Police, 375 F.3d 801, 808 (8th Cir. 2004)).

"For harassment to affect a condition of employment the conduct must be severe 'as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim.'" Singletary v. Missouri Dept. of Corrections, 423 F.3d 886, 892 (8th Cir. 2005) (quoting Howard v. Burns Bros., Inc., 149 F.3d 835, 840 (8th Cir. 1998)). "Hostile work environment harassment occurs when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Singletary, 423 F.3d at 886 (quoting Tademe v. Saint Cloud State Univ., 328 F.3d 982, 991 (8th Cir. 2003)). To determine whether a work environment is objectively offensive, the Court must examine all the circumstances including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance. Singletary, 423 F.3d at 893.

Plaintiff has established that he is a member of the protected class, he was subject to unwelcome harassment, and the harassment was based on a protected characteristic. Thus, the Court must focus on whether the harassment affected a term, condition, or privilege of employment. Plaintiff asserts that the comments occurred on a regular basis, and the Court finds that the alleged comments were repulsive and in very poor taste as "jokes," however, the Court has not found that the comments unreasonably interfered with Katoch's work performance. There are no allegations that plaintiff was unable to do his job. Although Mediq recounts problems with plaintiff not following directions and learning as fast as other employees, there is no evidence that Katoch's work performance was negatively affected by these comments. Frazee v. City of Independence, Missouri, 56 F. App'x 290, 291 (8th Cir. 2003) (unpublished per curiam) (profane remarks made to employee while relatively frequent and entirely inappropriate, insulting, and unprofessional were not so severe

and extreme that a reasonable person would find the terms and conditions of plaintiff's employment had been altered); Duncan v. General Motors, 300 F.3d 928, 934-35 (8th Cir. 2002) (same). Defendant, therefore, is entitled to summary judgment on plaintiff's hostile work environment claim.

### c. Retaliation

To establish a prima facie case of retaliation discrimination, a plaintiff must show (1) statutorily protected participation in Title VII processes,[14] (2) adverse employment action, and (3) a causal connection between the two. Hesse v. Avis Rent-A-Car System, Inc., 394 F.3d 624, 632 (8th Cir. 2005). The Court finds that plaintiff has failed to make a prima facie case. In his EEOC charge, Katoch asserts that Mediq retaliated against him because the altercation with Thompson followed his last complaint of discrimination. (Shapiro Aff., Ex. 14). In his complaint, plaintiff simply states, "Mediq has unlawfully retaliated against Katoch for filing a grievance with the company as a result of harassment and intimidation at workplace." (Am. Compl. ¶ 35).

Plaintiff fails to establish that he participated in statutorily protected Title VII processes. There is no evidence that plaintiff filed any complaints of harassment since his unrelated complaints against Settles and Urness were filed in October 2000 and July 2001, respectively. The record shows that plaintiff's complaints against Settles and Urness were well-detailed, plaintiff followed up on the complaints, and he inquired about Mediq's responses. Mediq's responses are also recorded. Plaintiff's claim that he filed subsequent grievances has no support in the record and is called into question by plaintiff's prior actions regarding the Settles and Urness harassment complaints. Because plaintiff cannot show that he participated in a Title VII statutorily protected activity, plaintiff's Title VII retaliation claim fails as a matter of law. Likewise, plaintiff's MHRA claim fails because plaintiff

---

[14]There is no substantive difference between the Title VII and MHRA elements of a retaliation claim. See Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 715 n. 8 (8th Cir. 2000).

has not established that he complained of discrimination. Floyd v. State of Missouri Dep't of Social Services, 188 F.3d 932, 938 (8th Cir. 1999). Therefore, the Court will grant summary judgment in favor of Mediq on plaintiff's retaliation claims.

### 2. Disability Discrimination Claim

Plaintiff has no direct or any other evidence of discrimination based on disability in violation of the Missouri Human Rights Act, Mo. Rev. St. § 213.055.1(1)(a), based on the allegations in his complaint. As previously noted, Plaintiff does not cite the ADA in his complaint. Therefore, the Court addresses plaintiff's disability discrimination claim only under the MHRA. Claims under the MHRA are governed by the same standards as claims under the ADA. Treanor v. MCI Telecomm Corp., 200 F.3d 570, 574 (8th Cir. 200). Plaintiff did not address his disability discrimination claim in his memorandum in opposition to defendant's motion for summary judgment. In his statement of facts opposing defendant's statement of uncontroverted facts, plaintiff attempts to dispute defendant's fact paragraphs addressing his diabetes, but plaintiff's responses either are not supported by the record or do not controvert defendant's fact statements.

In this case, plaintiff's allegations regarding his disability are that "Katoch's supervisor and coworkers also complained that he was slow at work and when I took medication for diabetes, or when he felt hypoglycemic and took a break to ingest some sugar to alleviate these symptoms." (Am. Compl. ¶ 19). Plaintiff also alleges, "Mediq and its agents knew that Katoch suffers from diabetes, and that he regularly took medication for relief from the medical condition. Mediq and its agents have harassed and intimidated Katoch for his occasional taking a short break from work to ingest sugar to alleviate hypoglycemia." (Am. Compl. ¶ 33). Plaintiff stated in his interrogatories that his blood pressure and diabetes became worse as a result of his discharge and treatment. (Pl.'s Ex. C, Interrog. Resp. 18).

A plaintiff may bring an ADA hostile environment or harassment claim. Shaver v. Independent Stave Co., 350 F.3d 716, 720 (8th Cir. 2003). Missouri courts have not addressed whether there is a hostile work environment claim based on disability under the MHRA, but "in deciding a case under the MHRA [the Court] is guided by both Missouri law and any applicable federal employment discrimination decisions." Medley v. Valentine Radford Commc'n, Inc., 173 S.W.3d 315, 319 (Mo. Ct. App. 2005). To be entitled to relief, the plaintiff must show that (1) he is a member of the class of people protected by the statute, (2) he was subject to unwelcome harassment, (3) the harassment resulted from his membership in the protected class, and (4) the harassment was severe enough to affect the terms, conditions or privileges of his employment. Id.

First, plaintiff did not establish that he was disabled under the statute. "To be disabled under the MHRA, a person must have an impairment that limits a major life activity and with or without reasonable accommodation that impairment must not interfere with performing a job." Medley, 173 S.W.3d at 320. Plaintiff has not shown that his diabetes has limited a major life activity. "A person whose physical and mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not 'substantially limit' a major life activity." Sutton v. United Airlines, 527 U.S. 471, 482-83 (1999). A diabetic is not considered disabled per se. Id. at 483. "In resisting summary judgment, [plaintiff] failed to present evidence explaining either how diabetes substantially affects his major life activities or the duration or frequency of any limitations." Orr v. Wal-Mart Stores, 297 F.3d 720, 724 (8th Cir. 2002).

Second, if plaintiff had established he was a member of the protected class, plaintiff has not produced any evidence that would create a genuine dispute of material fact that he was harassed because he was disabled or that the harassment was severe enough to affect the terms, conditions, or privileges of his employment. The record is completely devoid of anything that could be

considered severe harassment of plaintiff because of his diabetes. Comments about plaintiff being slow clearly do not meet this standard. Plaintiff has not produced any evidence of when this alleged harassment occurred, its frequency, or duration.

Finally, the fact that plaintiff failed to even discuss his disability claim in his opposition memorandum constitutes abandonment of the claim. See Cornice v. Terry, No. 97-3460 (8th Cir. May 19, 1999) (unpublished per curiam) (where the nonmoving party did not mention a claim in response to the motion for summary judgment and failed to provide support for it at an evidentiary hearing, the claim was abandoned) (citing Vaughn v. Mobil Oil Exploration and Producing Southeast, Inc., 891 F.2d 1195, 1198 (5th Cir. 1990)). Therefore, the Court finds that plaintiff would not be able to make a showing sufficient to establish the existence of an element essential to his case at trial and summary judgment should be entered for defendant on plaintiff's claim of disability discrimination. See Celotex, 477 U.S. at 322.

### 3. Age Discrimination Claim

Plaintiff's final claim is that he suffered harassment because of his age.[15] Specifically, in his complaint, he alleges that "Chris Counts and other Mediq employees made several insulting jokes and comments regarding Katoch's . . . age." (Am. Compl. ¶ 14). Harassment based on age "is actionable when that harassment is so 'severe or pervasive' as to 'alter the conditions of the victim's employment and create an abusive working environment.'" Breeding, 164 F.3d at 1158 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998)). Actionable harassment must be

---

[15]As previously noted, plaintiff's complaint does not assert a claim under the Age Discrimination in Employment Act, but rather attempts to assert a federal age discrimination claim under Title VII. The Court, therefore, addresses plaintiff's age discrimination claim under the MHRA. The MHRA and federal age discrimination claims are analyzed under the same standard. Denesha v. Farmers Ins. Exch., 161 F.3d 491, 497 (1998).

objectively and subjectively offensive. <u>Weyers v. Lear Operations Corp.</u>, 359 F.3d 1049 (8th Cir. 2004) (citing <u>Breeding</u>, 164 F.3d at 1158).

As with plaintiff's disability harassment claim, plaintiff has not shown that he can establish elements essential to his claim of age discrimination at trial. Plaintiff has not specified any of the comments allegedly made by his supervisors or coworkers regarding his age and therefore, there is no basis from which the Court can evaluate whether the alleged age-related harassment was so "severe or pervasive" as to alter the conditions of his employment or create an abusive working environment. In addition, plaintiff does not mention his age discrimination claim in his opposition memorandum and therefore has abandoned the claim. The Court will grant defendant's motion for summary judgment regarding plaintiff's age discrimination claim.

**Conclusion**

For the foregoing reasons, the Court will grant summary judgment in favor of defendant Mediq/PRN Life Support Services, Inc. on all remaining claims in this action.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment is **GRANTED**. [Doc. 82]

**IT IS FURTHER ORDERED** that plaintiff's motion to strike affidavit of Lynne Shapiro is **DENIED**. [Doc. 86]

An appropriate judgment will accompany this memorandum and order.

_____

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this <u>2nd</u> day of March, 2006.